

1 Maureen Sullivan (SBN 164763)
David Mandel (SBN 152271)
2 Legal Services of Northern California
444 North 3rd St., Suite 312
3 Sacramento, California 95811
(916) 551-2140
4 FAX: (916) 551-2197

5 Attorneys for Plaintiff Rachel Scherbenske

FILED
FEB - 6 2009
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>**RACHEL SCHERBENSKE,**<br><br>Debtor.<br><br>**RACHEL SCHERBENSKE**<br><br>Plaintiff,<br><br>v.<br><br>**WACHOVIA MORTGAGE, FSB FKA, WORLD SAVINGS BANK, FSB, A FEDERAL SAVINGS BANK, WELLS FARGO BANK, N.A., AND DOES 1-100,**<br><br>Defendants. | CASE NO. **08-38110-D-13L**<br><br>Chapter 13<br><br>Adv. Complaint No. **09-02010-D**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER PROHIBITING DEFENDANTS' 2/11/09 UNLAWFUL DETAINER HEARING SEEKING A WRIT OF POSSESSION IN THE SACRAMENTO SUPERIOR COURT ALLOWING THEM TO TAKE POSSESSION OF PLAINTIFF'S PROPERTY**<br><br>Hearing Date:<br>Time:<br>Place:<br>Judge:<br><br>Adv. Complaint Filed: January 7, 2009<br>Trial Date: Not yet set. |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................. 1

II. BACKGROUND .................................................. 3

    A. Defendants' Option ARM Loans ............................... 3

| | | | |
|---|---|---|---|
| | | 1. Obligations of the parties under the loan documents | 3 |
| | | 2. The parties performance under the loan documents | 3 |
| | | 3. Incorrect 3 day rescission date deceptive | 3 |
| | B. | Plaintiff's Claims | 3 |
| | C. | The Relief Sought By This Application | 3 |
| III. | ARGUMENT | | 4 |
| | A. | The Test For Granting A Preliminary Injunction | 4 |
| | B. | Without a Stay Being Issued Defendants' Unlawful Detainer Complaint Will Result In Irreparable Harm | 5 |
| | | 1. Defendants' Efforts to seek a Writ of Possession Home Will Result in Irreparable Harm | 5 |
| | C. | The Balance of Hardship Unfortunately Tips Decidedly In Favor of Plaintiff | 7 |
| | D. | Plaintiff and the Have A Strong Probability Of Success On The Merits | 7 |
| | | 1. Violations of the Truth in Lending Act, 15 USC § 1601 et seq | 8 |
| | | 2. Fraudulent omissions and violations of California Bus. & Prof. Code § 17200 et seq., "Unfair" and "Fraudulent" Business Acts or Practices | 9 |
| | | 3. Breach of contract | 10 |
| | | 4. Tortious breach of implied covenant of good faith and fair dealing | 12 |
| IV. | RELIEF REQUESTED | | 13 |

**TABLE OF AUTHORITIES**

Page(s)

**FEDERAL CASES**

Angotti v. Rexam, Inc.,
    (N.D. Cal. June 14, 2006) 2006 WL 1646135 .................................... 7, 8

Bland v. Carone Family Trust,
    (S.D. Cal. 2007) 2007 WL 951344 .................................................... 6

Chisolm v. TranSouth Fin. Corp.,
    (E.D. Va. 2000) 194 F.R.D. 538 ...................................................... 10

Deans v. Long Beach Mortgage Co.,
    (W.D. Mich. March 12, 2007) 2007 WL 772892 .................................. 6

F.T.C. v. H.N. Singer, Inc.,
    (9th Cir. 1982) 668 F.2d 1107 ........................................................ 7

Hallas v. Ameriquest Mortgage Co.,
    (D. Or. 2005) 406 F.Supp. 2d 1176 .................................................. 6

Heighley v. J.C. Penney Life Ins. Co.,
    (C.D. Cal. 2003) 257 F. Supp. 2d 1241 ............................................. 10

Helwig v. Kelsey-Hayes, Co.,
    (E.D. Mich. 1994) 857 F. Supp. 1168 ............................................... 7

Huff v. Stewart-Gwinn Furniture Co.,
    (4th Cir. 1983) 713 F.2d 67 ........................................................... 8

In re Figueroa,
    (Bkrtcy. S.D. Fla. Sept. 21, 2006) 2006 WL 4549615 .......................... 6

In re First Alliance Mortgage Co.,
    (9th Cir. 2006) 471 F.3d 997 ......................................................... 10

In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,
    (3d Cir. 1998) 148 F.3d 283 .......................................................... 10

International Jensen, Inc. v. Metrosound U.S.A., Inc.,
    (9th Cir. 1993) 4 F.3d 819 ............................................................. 5

Johnson v. U.S. Department of Agriculture,
    (11th Cir. 1984) 734 F.2d 774 ........................................................ 6

Lopez v. Heckler,
    (9th Cir. 1983) 713 F.2d 1432 ........................................................ 7

Marschner v. RJR Financial Services, Inc.,
    (E.D. Mich. 2005) 382 F.Supp. 2d 918 ............................................. 6

| | | |
|---|---|---|
| 1 | Mars v. Spartanburg Chrysler Plymouth, Inc.,<br>(4th Cir.1983) 713 F.2d 65 | 8 |
| 2 | | |
| 3 | Michaels v. Internet Entertainment Group, Inc.,<br>(C.D. Cal. 1998) 5 F.Supp.2d 823 | 5 |
| 4 | Miller v. Carlson,<br>(N.D.Cal. 1991) 768 F. Supp. 1331 | 7 |
| 5 | | |
| 6 | Netscape Commc'n. Corp. v. Fed Ins. Co.,<br>(N.D.Cal. 2006) 2006 WL 449149 | 10 |
| 7 | Nichols v. Deutsche Bank Nat. Trust Co.,<br>(S.D. Cal. 2007) 2007 WL 4181111 | 6 |
| 8 | | |
| 9 | Rendish v. City of Tacoma,<br>(9th Cir. 1997) 123 F.3d 1216 | 5 |
| 10 | Republic of Phillipines v. Marcos,<br>(9th Cir. 1987) 818 F.2d 1473 | 6 |
| 11 | | |
| 12 | Rodde v. Bonta,<br>(9th Cir. 2004) 357 F.3d 988 | 7 |
| 13 | Semar v. Platte Valley Fed. Sav. & Loan Ass'n.,<br>(9th Cir.1986) 791 F.2d 699 | 8 |
| 14 | | |
| 15 | Smith v. Cash Store Mgmt.,<br>(7th Cir.1999) 195 F.3d 325 | 8 |
| 16 | State of Alaska v. Native Village of Venetie,<br>(9th Cir. 1988) 856 F.2d 1384 | 5 |
| 17 | | |
| 18 | Textile Unlimited, Inc. v. ABMH & Co., Inc.,<br>(9th Cir. 2001) 240 F.3d 781 | 5 |
| 19 | United Church of Med. Ctr. V. Med. Ctr. Comm'n,<br>(7th Cir. 1982) 689 F.2d 693 | 6 |
| 20 | | |
| 21 | United Steal Workers of Am. v. Textron, Inc.,<br>(1987) 836 F.2d 6 | 7 |
| 22 | Wrobel v. S.L. Pope & Associates,<br>(S.D.Cal. 2007) 2007 WL 2345036 | 6 |
| 23 | | |
| 24 | **STATE CASES** | |
| 25 | Badie v. Bank of America,<br>(1998) 67 Cal. App. 4th 779 | 11 |
| 26 | | |
| 27 | Comm. on Children's Television, Inc. v. Gen. Foods Corp.,<br>(1983) 35 Cal. 3d 197 | 10 |
| 28 | | |

Guz v. Bechtel Nat. Inc.,
    (2000) 24 Cal. 4th 317 ........................................................... 13

Jacobs v. Freeman,
    (1980) 104 Cal. App. 3d 177 .................................................... 11

Lazar v. Superior Court,
    (1996) 12 Cal.4th 631 .......................................................... 10

Schnall v. Hertz Corp.,
    (2000) 78 Cal. App. 4th 1144 ................................................... 10

Small v. Fritz Companies, Inc.,
    (2003) 30 Cal.4th 167 .......................................................... 10

Wall Street Network, Ltd. v. New York Times Co.,
    (2008) 164 Cal. App. 4th 1171 .................................................. 11

Nguyen v. Calhoun,
    (2003) 105 Cal.App.4th 428...................................................... 12

**FEDERAL STATUTES**

15 U.S.C. § 1601 ................................................................. 3, 8

**STATE STATUTES**

Bus. & Prof. Code. § 17200 ................................................. 4, 8, 9, 10

Cal. Civ. § 1654 .................................................................. 11

**FEDERAL REGULATIONS**

12 C.F.R. § 226.17 ................................................................. 8

12 C.F.R. § 226.19 ................................................................. 8

Federal Reserve Board Official Staff Commentary to 12 C.F.R. 226.17 ................ 8

Federal Reserve Board Official Staff Commentary to 12 C.F.R. 226.19 ................ 8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff is a 68-year-old, female borrower with multiple serious disabilities. In mid-2006, Plaintiff was targeted by a real estate broker ("Doe 1") who employed deception, fraud, manipulation and aggressive sales tactics to induce her into refinancing her home loan. The World Savings loan of $192,000 was made to Ms. Scherbenske on August 4, 2006, at a time when she was living on Social Security income of $718 per month and a pension of $667.35 per month. Despite this, typewritten by the originator on her loan application was a monthly income of $2,700 – a gross falsification. The August 4, 2006 loan was only the latest in a series of refinance loans Ms. Scherbenske obtained through World Savings. Like many others in her situation of late, she engaged in serial refinancing, succumbing to sales pitches for "lower payments" that were so common during the housing bubble. The additional cash that some of the refinances generated was used to pay off arrearages and unsecured debt that Ms. Scherbenske had accumulated, and any "lower payments" were short-lived. The misguided refinances reflected her desperate efforts to stay afloat financially with her fixed income and mounting bills. Naturally, with this strategy, each refinance caused the amount owed to grow: $137,500 after a 2004 loan, $172,000 in 2005 and $192,000 by 2006 – all from World Savings.

On multiple occasions, Doe 1 orally stated that Plaintiff was going to receive a 5 percent, fixed-rate mortgage for the life of the loan. A large stack of papers was presented to her to sign. Plaintiff wanted to read the documents before she signed them but Doe 1 rushed through the documents, stating that it was a 5% fixed-rate mortgage and she had to hurry and sign before she lost the 5% offer. Doe 1 had her sign loan documents on multiple occasions. This confused Plaintiff.

The mortgage Plaintiff received turned out to be a "pick-a-pay" loan, commonly sold during recent years by World Savings/Wachovia, in which the borrower receives a monthly bill with three options. Defendants send this monthly bill continuously for the life of the loan. Under the loan documents, borrowers were required to make monthly payments according to the payment schedule Defendants set forth in the accompanying Truth-In-Lending Disclosure Statement ("TILDS"). Once the borrower made payments, the loan Note required Defendants to apply these payments to both interest

and principal by applying them first to interest and the remaining amount to principal. The parties agreed that each payment would be a fully-amortizing payment. Thus, under the loan documents, each payment made by the borrower would reduce her principal balance and increase the equity she had in the home. But that is not what has happened. Instead, unbeknownst to Plaintiff, the payments for the first ten years were based upon a completely undisclosed rate. Defendants did not apply any portion of her payments to her principal balances. Instead, they applied her payments only to a portion of the interest. As a result, each and every borrower's principal balance actually increased over time by up to as much as 25%. The TILDS provided to Plaintiff failed to disclose the correct amounts of payments of the life of the loan and in addition failed to reveal the negative amortization if the least payment is constantly made. (See Exhibit B of the adversary complaint.) The first option, most commonly selected by borrowers under this scheme, involves paying less than the interest being accumulated, thus causing the total balance due to increase over time, until it reaches a set maximum, typically 125 percent of the original loan balance. When that occurs, the loan payments are "recast" to reflect full amortization of the loan for its remaining term. Typically, this causes a huge jump in the required monthly payments – and the phenomenon is a major contributor to the current foreclosure crisis.[1]

On July 2, 2008, pursuant to the Real Estate Settlement Procedures Act (RESPA), Plaintiff through her foreclosure counselors served Defendant Wachovia a qualified written request disputing the amount allegedly owed at that time, $9,055.22. The qualified written request also noted that Plaintiff's account had not been credited for a number of payments made to Wachovia from her checking account in late 2007 and early 2008. To date, Defendants have failed to reply to the July 2008 qualified written request or clarify the dispute by any other means (See Exhibit D of Maureen Sullivan's Declaration).

From June 2008 through October 20, 2008, Defendants agreed to postpone the trustee's sale to allow the Defendants time to figure out their multiple errors in calculating the correct amount Plaintiff owes and to consider Plaintiff's payoff offer. On October 20, 2008, Defendant's Foreclosure Department supervisor Mike Lara orally told Plaintiff's foreclosure counselor David Madriz, daughter Stacey Scherbenske and a third party witness Vanessa Fair that he would postpone the trustee's sale

---

[1] Plaintiff intends to clarify the pick-a-pay cause of action in an amended adversary complaint filed in the near future.

scheduled for later that day. As consideration for this promise, Plaintiff paid $300 for an appraisal in the process of completing a reverse mortgage application with Wells Fargo and making an offer to pay off Defendants' mortgage. Despite Plaintiff fulfilling her terms of the agreement Defendants did not and the trustee's sale was conducted, constituting a breach of the oral contract.

On January 29, 2009 this court issued an order granting Defendants' motion to lift the automatic stay resulting from Plaintiff's bankruptcy filing. Soon thereafter Defendants scheduled an unlawful detainer hearing in the Sacramento Superior Court so seek a writ of possession that would order the Sacramento Sheriff Department to physically remove Plaintiff from her property, allowing Defendants to take possession of Plaintiff's property.

If Defendants are permitted to proceed with the unlawful detainer and obtain a writ of possession, Plaintiff will lose her home. The only way to prevent this tragic result is for the court to issue a preliminary injunction, enjoining Defendants from: (a) selling Plaintiff's home; and (b) seeking a writ of possession, which would cause the Sacramento Sheriff's Department to physically evict/remove Plaintiff from her property.

## II. BACKGROUND

### A. Defendants' Option ARM Loans

Plaintiff is a borrower who secured a so-called option ARM (adjustable rate mortgage) loan, also knows as a "pick-a-pay" loan, on her primary residence from Defendants during the liability period. Defendants marketed their ARM loans as having low interest rates and low payment obligations. Not surprisingly, Plaintiff refinanced her home in order to benefit from the advertised low rates, payment obligations and the oral offer from Doe 1 of a 5% fixed interest mortgage for the life of the loan.

### B. Plaintiff's performance under the loan documents.

Plaintiff lived up to her end of the bargain by making the monthly payments due according to Doe 1's oral disclosure of a 5% fixed-rate mortgage.

### C. Plaintiff's Claims

Plaintiff, individually, has brought a claim against Defendants, alleging, *inter alia*, violations of the Truth in Lending Act (TILA), 15 USC § 1601, *et seq*, the Real Estate Settlement Procedures Act

(RESPA), 12 U.S.C. § 2601, *et seq.*, California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq.*, "unfair" and "fraudulent" business acts or practices, fraudulent omissions, breach of contract, breach of the implied covenant of good faith and fair dealing, and financial elder abuse, California Welfare Institution Code §15600, *et seq.*

### D. Relief Sought By This Application

Plaintiff seeks an order stating that neither Defendants nor anyone working in conjunction with them may pursue any eviction (unlawful detainer proceedings); specifically that they not be allowed to seek a writ of possession pertaining to Plaintiff's home.

### III. ARGUMENT

Defendants proceeded with an October 20, 2008 trustee's sale after orally promising to postpone the trustee's sale to allow Plaintiff an opportunity to produce an offer to pay off the mortgage. Defendants had already postponed the trustee's sale for several months and orally agreed to postpone it further to allow for Plaintiff's reverse mortgage lender to calculate the payoff amount to be tendered, following an appraisal that was conducted a week prior to the October 20, 2008 trustee's sale. As a result, Plaintiff lost her home through foreclosure. Currently Plaintiff is suffering from emotional distress, among other harm, because of Defendants' actions as stated above. Defendants' conduct, therefore, has caused and continues to cause Plaintiff significant damage. As this legal conduct continues Defendants have failed to provide the documents from Plaintiff's subpoena served on Defendants[2]. The information being sought is the October 20, 2008 electronic communication from Defendants' Loss Mitigation Supervisor Mike Lara to the trustee. An issuance of a temporary restraining order/ preliminary injunction is the only way to prevent Defendants from continuing to cause this substantial harm.

### A. The Test For Granting A Preliminary Injunction

"A preliminary injunction is not a preliminary adjudication on the merits but a device for

---

[2] Plaintiff intends to file a motion to compel for the documents that Plaintiff's subpoena requested.

preserving the status quo and preventing irreparable loss of rights before judgment." Textile Unlimited, Inc. v. ABMH & Co., Inc. (9th Cir. 2001) 240 F.3d 781, 786. The decision on whether to enter a preliminary injunction is within the broad discretion of the District Court, Rendish v. City of Tacoma (9th Cir. 1997) 123 F.3d 1216, 1219, because the fundamental purpose of a preliminary injunction is to preserve the status quo by preventing irreparable injury and to "preserve the court's power to render meaningful relief after a trial on the merits." Republic of Phillipines v. Marcos (9th Cir. 1987) 818 F.2d 1473, 1480; see also Textile Unlimited, Inc., 240 F.3d at 786.

A party seeking preliminary relief must show either: (i) a combination of probable success on the merits and the possibility of irreparable injury if relief is not granted, or (ii) the existence of serious questions governing the merits and a balance of hardships that tips in its favor. Michaels v. Internet Entertainment Group, Inc. (C.D. Cal . 1998) 5 F.Supp.2d 823, 830 (quoting International Jensen, Inc. v. Metrosound U.S.A., Inc. (9th Cir. 1993) 4 F.3d 819, 822). These standards "are not separate tests but the outer reaches of a single continuum." Id. "The critical element in determining the test to be applied is the relative hardship to the parties. If the balance of harm tips decidedly toward the Plaintiff, then the Plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." State of Alaska v. Native Village of Venetie (9th Cir. 1988) 856 F.2d 1384, 1389.

In the present case: (1) Plaintiff will suffer irreparable injury if Defendants are permitted to persist in their wrongful conduct; (2) the balance of hardship undoubtedly weighs decidedly in Plaintiff's favor; and (3) Plaintiff has a strong probability of success on the merits.

B. **Without a Stay Being Issued, Defendants' Unlawful Detainer Complaint Will Result In Irreparable Harm**

1. **Defendants' efforts to seek a writ of possession on Plaintiff's home will result in irreparable harm.**

Plaintiff will suffer irreparable injury if Defendants are permitted to persist with their effort to

obtain a writ of possession, causing the Sacramento Sheriff's Department to physically remove the Plaintiff from her property and allowing Defendants to sell her property.

First, and most importantly, Plaintiff would suffer irreparable injury by virtue of losing her home. Wrobel v. S.L. Pope & Associates (S.D.Cal. 2007) 2007 WL 2345036, at *1 ("Losing one's home through foreclosure is an irreparable injury"); Bland v. Carone Family Trust (S.D. Cal. 2007) 2007 WL 951344, at *3 ("The Court finds irreparable harm if Plaintiff's residence is sold prior to determining the merits of Plaintiff's claims"). Numerous courts have found this risk to be enough by itself to justify preliminary injunctive relief. See, e.g., Nichols v. Deutsche Bank Nat. Trust Co. (S.D. Cal. 2007) 2007 WL 4181111, at *2; United Church of Med. Ctr. V. Med. Ctr. Comm'n (7th Cir. 1982) 689 F.2d 693, 701 ("A piece of property is always considered unique, and its loss is always an irreparable injury"); Johnson v. U.S. Department of Agriculture (11th Cir. 1984) 734 F.2d 774, 789 ("irreparable injury is suffered when one is wrongfully ejected from his home. Real property and especially a home is unique"). Without the Court's intervention, irreparable harm is imminent.

Second, Plaintiff would suffer irreparable injury because she would forever lose a key aspect of the relief TILA affords homeowners: the right of rescission. In re Figueroa (Bkrtcy. S.D. Fla. Sept. 21, 2006) 2006 WL 4549615 at *3 ("TILA provides additional protections in loan transactions secured by the borrower's principal dwelling. The most important of these is the right to rescind the transaction within a specified period of time"). One way Plaintiff can lose her rescission remedy is through the sale of the home, even where the sale is involuntary. See, e.g., Deans v. Long Beach Mortgage Co. (W.D. Mich. March 12, 2007) 2007 WL 772892, at *3 (finding irreparable injury sufficient to justify a TRO because "the right to rescind the loan under TILA expires upon the voluntary or involuntary transfer of the property"); Hallas v. Ameriquest Mortgage Co. (D. Or. 2005) 406 F.Supp. 2d 1176, 1183 ("the foreclosure sale has terminated Plaintiff's right of rescission"); Marschner v. RJR Financial Services, Inc. (E.D. Mich. 2005) 382 F.Supp. 2d 918, 921 ("That the predatory features of the mortgage and Defendant's conduct are clear violations of TILA and HOEPA is apparent on the face of the mortgage

6

documents. ... [However] Plaintiff is precluded from obtaining relief through rescission because the right to any such relief was cut off by the sheriff's sale on May 23, 2003"). As a result of the wrongful foreclosure of Plaintiff's home, this Court undoubtedly has the power to restore Plaintiff's ownership of the subject property in order to prevent the possibility of that remedy evaporating before the case is even decided. F.T.C. v. H.N. Singer, Inc. (9th Cir. 1982) 668 F.2d 1107, 1112 ("Rescission is an old equitable remedy and the district court has power to issue a preliminary injunction to preserve the status quo in order to protect the possibility of that equitable remedy").

### C. The Balance of Hardship Unfortunately Tips Decidedly In Favor of Plaintiff

The status quo is that Plaintiff has control of her home, while Defendants possess a security interest in it. If a preliminary injunction is granted, it will do nothing more than preserve this status quo pending resolution of the case. Defendants' position will not change and neither will Plaintiff's.

However, as described above, if Defendants obtain a writ of possession, which they are seeking from Sacramento Superior Court, Plaintiff will be displaced from her home and lose her rescission remedy, causing her significant damage.

By contrast, the impact of a preliminary injunction on Defendants is not so devastating. At present, Defendants claim a security interest in Plaintiff's home. In the unlikely event this action is ultimately resolved in favor of Defendants, they would still possess that security interest. In other words, Defendants' position would be virtually unchanged.

In light of the lopsided balance of hardship in this case and the human suffering facing Plaintiff, a preliminary injunction is warranted. See Rodde v. Bonta (9th Cir. 2004) 357 F.3d 988, 999 (Faced with "a conflict between financial concerns and preventable human suffering, we have little difficulty concluding that the balance of hardships tips decidedly in plaintiff's favor" (quoting Lopez v. Heckler (9th Cir. 1983) 713 F.2d 1432, 1437)); see Angotti, 2006 WL 1646135, at *16; Miller, 768 F. Supp. at 1339-40.

### D. Plaintiff Has A Strong Probability Of Success On The Merits

Plaintiff is likely to succeed on the merits of her claims against Defendants, which include violations of the Truth in Lending Act, 15 USC § 1601 *et seq.*, violations of California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq.*, "Unfair" and "Fraudulent" Business Acts or Practices, fraudulent omissions, breach of contract, and breach of the implied covenant of good faith and fair dealing. The strong probability of success on the merits of each of these claims is addressed in turn.

### 1. Violations of the Truth in Lending Act, 15 USC § 1601 *et seq.*

Any deviation from TILA's disclosure requirements, no matter how small or technical, is sufficient to support a judgment for Plaintiff and trigger the right to rescind. Semar v. Platte Valley Fed. Sav. & Loan Ass'n. (9th Cir.1986) 791 F.2d 699, 703-04 ("Technical or minor violations of TILA or Regulation Z, as well as major violations, impose liability on the creditor and entitle the borrower to rescind."); Mars v. Spartanburg Chrysler Plymouth, Inc. (4th Cir.1983) 713 F.2d 65, 67 (holding that a technical violation, even if merely a "minor variation in language and type size" from TILA requirements, creates liability); Huff v. Stewart-Gwinn Furniture Co. (4th Cir.1983) 713 F.2d 67, 69 (minor violations of TILA and Regulation Z impose liability even if, as the creditor alleged, the consumer "was not misled and was given a meaningful and correct disclosure of crucial credit terms"); Smith v. Cash Store Mgmt. (7th Cir.1999) 195 F.3d 325, 328 ("hypertechnicality reigns in the application of TILA.")

The documents that Defendants created in connection with Plaintiff's loan failed to comply with TILA's disclosure requirements. First, Defendants failed to disclose in a clearly understandable manner the interest rate upon which Plaintiff's low initial monthly payments were based. See 12 C.F.R. §226.17 and commentary thereto ("the disclosures must be presented in a way that does not obscure the relationship of the terms to each other"). Second, Defendants failed to disclose that the payment cap associated with the loan was <u>guaranteed</u> to cause negative amortization if Plaintiff complied with the payment schedule provided by Defendants. 12 C.F.R. §226.19; 12 C.F.R. §226.17 (and commentary thereto). Whether those failures are substantial or merely technical is irrelevant. Any failure to comply

with the TILA disclosure requirements constitutes a violation of TILA and entitles a borrower to rescission.

The fact that Plaintiff was not provided the disclosures required by TILA in the form required by TILA is clear and indisputable. Plaintiff is therefore highly likely to prevail on her claims. However, Even if there were some doubt about this, however, because the balance of hardships tips so heavily toward Plaintiff it is enough that there are substantial questions regarding whether the Defendants' loan documents complied with the disclosure requirements of TILA.

### 2. Fraudulent Omissions and violations of California Bus. & Prof. Code § 17200 *et seq.*, "Unfair" and "Fraudulent" Business Acts or Practices.

Plaintiff is also likely to prevail on the merits of her claims of fraudulent omissions and unfair business practices. Plaintiff contends that Defendants engaged in a campaign of deceptive conduct and concealment aimed at the goal of maximizing the number of consumers who would purchase their option-ARM loans, ignoring whether borrowers could afford the loan once the interest adjusted up or negative amortization occurred.

Defendants aggressively sold their option-ARM loans, touting their "low payments" and low initial interest rates. They also promised that loan payments would be applied to both interest and principal, meaning that each payment would reduce the principal balance. To no one's surprise, these loans – as presented – were extremely popular. Plaintiff agreed to refinance her primary residence through a series of ARM loans, expecting to obtain the promised low interest rates and payment schedules with the understanding that her payments would be applied to both principal and all interest due.

What Defendants failed to disclose to Plaintiff before this unsuspecting borrower entered into her last loan was that Defendants had no intention of applying Plaintiff's payments even to cover all of the interest actually owed, let alone to reduce the principal as promised. Nor did Defendants inform Plaintiff that the loans would negatively amortize so much that they would necessarily lose a significant

amount of equity in her home over the first years of the loan. Accordingly, after purchasing Defendants' ARM loan product, Plaintiff never received the benefit of the loan promised to her.

Defendants initiated and pursued this bait-and-switch scheme to maximize the number of loans issued to consumers and to maximize their profits. Defendants' failures to disclose important material information concerning the actual cost of the loans was unfair, fraudulent and deceptive.

To establish her fraudulent omission allegations, Plaintiff must prove: (1) an omission of material fact; (2) knowledge of falsity (scienter); (3) intent to defraud; (4) justifiable reliance; and (5) resulting damages. Lazar v. Superior Court (1996) 12 Cal.4th 631, 638; see also Small v. Fritz Companies, Inc. (2003) 30 Cal.4th 167, 173. Here, where there are uniform documents the Court can surely see the "common course of conduct" and "underlying scheme." In re First Alliance Mortgage Co. (9th Cir. 2006) 471 F.3d 997. See also Chisolm v. TranSouth Fin. Corp. (E.D. Va. 2000) 194 F.R.D. 538; In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions (3d Cir. 1998) 148 F.3d 283.

Additionally, California's Unfair Competition Law, ("UCL")[3], prohibits unfair, unlawful and fraudulent business activities. Cal. Bus. & Prof. Code § 17200, *et seq.* Each prong of the UCL is a separate and distinct theory of liability. See Schnall v. Hertz Corp. (2000) 78 Cal. App. 4th 1144, 1153. To establish a violation of the fraudulent prong of the UCL requires a finding only that the practices at issue are "likely to deceive" the public. See Heighley v. J.C. Penney Life Ins. Co. (C.D. Cal. 2003) 257 F. Supp. 2d 1241, 1259 (citing Comm. On Children's Television, Inc. v. Gen. Foods Corp. (1983) 35 Cal. 3d 197, 211); see also Netscape Commc'n. Corp. v. Fed Ins. Co. (N.D.Cal. 2006) 2006 WL 449149. This is true of the loan documents on their face, as they indicate that Plaintiff's monthly payments would be sufficient to pay both principal and interest, when in fact such payments were not sufficient.

3. **Breach of contract.**

To establish her breach of contract claims, Plaintiff must prove: (1) the existence of a valid

---

[3] California's Unfair Competition Law ("UCL"), Business & Professions Code Sec. 17200, was designed to protect competitors and consumers from illegal, fraudulent, and "unfair" business practices, and Business & Professions Code Sec. 17500 prohibits false advertising.

contract; (2) her performance or excuse for nonperformance; (3) Defendants' breach; and (4) damage to Plaintiff. Wall Street Network, Ltd. v. New York Times Co. (2008) 164 Cal. App. 4th 1171, 1178 (citation omitted). To the extent there is uncertainty in an agreement, it is to be construed against the drafter. See Cal. Civ. § 1654; Badie v. Bank of America (1998) 67 Cal. App. 4th 779, 801 ("a contract must be interpreted most strongly against the party who prepared it"); Jacobs v. Freeman (1980) 104 Cal. App. 3d 177, 189.

Here, Plaintiff entered into a written home loan contract – the promissory note – with Defendants. The note was drafted by Defendants and could not be modified by Plaintiff. It, along with the TILDS, describes the terms and respective obligations applicable to the parties. The note prepared by Defendants states that Plaintiff "will pay principal and interest by making a payment every month" and the TILDS provides a monthly payment schedule. These documents dictated that Plaintiff was required to make the payments set forth on the payment schedule and that Defendants were required to apply each payment to principal and interest.

As such, the agreements contemplated that each monthly payment listed on the payment schedule would be sufficient to cover all of the interest for that month and a portion of the principal balance.

Plaintiff lived up to her end of the bargain by making the monthly payments according to the oral disclosure of a 5% fixed-rate mortgage made by Doe 1. But Defendants did not live up to their end of the bargain. They did not apply Plaintiff's payments to both principal and all interest due. Indeed, they did not apply a single payment to principal, and as a rule, they applied each payment to only a portion of the interest. Defendants therefore materially breached the agreements. As a result of Defendants' breach, Plaintiff's principal balance, which was supposed to be reduced by each payment on the payment schedule, actually ballooned by as much as 25 percent. Plaintiff therefore has been injured by losing equity in her home and facing increased monthly mortgage payments and increased interest charges, and has been placed in danger of losing her home through eviction following a foreclosure sale.

Defendants orally agreed to postpone the October 20, 2008 trustee's sale, communicating this

intention to Plaintiff's foreclosure counselor, daughter and a third party. By going forward with the trustee's sale, Defendants committed breach of an oral contract. Two key factors meet the judicial test for an improper foreclosure. Citing (<u>Nguyen v. Calhoun</u>, (2003) 105 Cal.App.4th 428), the court determined that least two key factors that set this case apart from <u>Raedeke</u>.

First, plaintiff in <u>Nguyen</u> did not sue at law for breach of an oral promise; instead he sued in equity for quiet title and declaratory relief. (Compare <u>Raedeke</u>, supra, 10 Cal.3d at pp. 668, 671-672, 674-675, 111 Cal.Rptr. 693, 517 P.2d 1157 [plaintiffs' action was at law, not in equity].) Second, in this case, no one involved with the escrow properly tendered performance of the oral agreement. (Compare, id. at p. 670, 111 Cal.Rptr. 693, 517 P.2d 1157 [jury made a special finding that plaintiffs procured a purchaser prior *445 to the foreclosure sale].)

It is Plaintiff's position that she satisfied key elements in the <u>Nguyen</u> case by stating in her adversary complaint a breach of an oral contract cause of action, based on Defendants' breach of their promise to postpone the October 20, 2008 trustee's sale in light of Plaintiff's efforts to secure a reverse mortgage, the proceeds of which were to constitute her offer to pay off of Defendants' mortgage. (See the Declaration of Plaintiff Rachel Scherbenske.)

**4.    Tortious breach of implied covenant of good faith and fair dealing.**

Under the loan documents, Defendants agreed to provide a loan, secured by Plaintiff's residence, with low interest and payment schedules for 10 years. Defendants further agreed that each payment would be applied to both principal and all interest due. By providing for such, the loan documents necessarily dictated that the payments would be amortized. In other words, since negative amortization cannot occur when interest is fully paid and principal is paid down, the terms of the loan documents effectively guaranteed that no negative amortization would ever occur. (See Exhibit B of Maureen Sullivan's declaration.)

At no time did Defendants indicate to Plaintiff that payments made pursuant to the payment schedule would be applied to only a portion of interest. But that is exactly what Defendants did with the

very first payment. By their patently deceptive conduct, Defendants unreasonably denied Plaintiff the benefits promised to them under the terms of the loan documents and breached the covenant of good faith and fair dealing. See Guz v. Bechtel Nat. Inc. (2000) 24 Cal. 4th 317, 349 (The covenant of good faith and fair dealing "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made"); Jacobs, supra, 104 Cal. App. 3d at 188 ("[In] every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement") (citation omitted).

## IV.  **RELIEF REQUESTED**

For the foregoing reasons, Plaintiff requests that the court issue an order enjoining Defendants Wachovia Mortgage, FSB FKA, World Savings Bank, FSB, a federal savings bank, Wells Fargo Bank, N.A., from: (a) Proceeding with an unlawful detainer hearing scheduled for February 11, 2009 at the Sacramento Superior Court seeking a court order for writ of possession, which would cause Plaintiff to be physically removed from the property; and (b) selling or attempting to sell Plaintiff's home.

DATED: February 6, 2009  **Legal Services of Northern California**

By: *Maureen Sullivan* (signature)

Maureen A. Sullivan, Esq.
David Mandel, Esq.
444 North 3rd Street, Suite 312
Sacramento, California 95811
Phone: (916) 551-2140
Fax:   (916) 551-2197
Attorneys for Rachel Scherbenske